UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **ANNETTE RANDALL** | **CIVIL ACTION NO. 06-2093** |
| VS. | **JUDGE DOHERTY** |
| **MICHAEL J. ASTRUE,** **COMMISSIONER SOCIAL SECURITY** **ADMINISTRATION** | **MAGISTRATE JUDGE METHVIN** |

### SUPPLEMENTAL REPORT AND RECOMMENDATION

On February 27, 2008, I issued a report recommending that the Commissioner's finding of non-disability be affirmed.[1] On April 1, 2008, the court remanded the case for consideration of whether Randall's "deficits in adaptive functioning – whatever they might be and whether falling under Listing 12.05 A, B, C, or D – manifested before she reached the age of 22."[2] Accordingly, the following supplemental report is issued.[3]

*Background*

Annette Randall is currently 43 years old. Randall completed the ninth grade in regular education classes, has worked as a housekeeper, and raised six children. Randall alleges that she is disabled under Appendix 1, 20 C.F.R., Part 404, § 12.05(C), the Mental Retardation Listing.[4] On July 31, 2003, at the request of DDS, Randall was evaluated by Alfred E. Buxton, Ph.D., a

---

[1] Rec. Doc. 12.

[2] Rec. Doc. 14.

[3] For a review of the administrative record in this case, see Rec. Doc. 12.

[4] Appendix 1, 20 C.F.R., Part 404, § 12.05(C).

2

clinical psychologist.[5]  Dr. Buxton administered the Wechsler Adult Intelligence Scale-III, which yielded a full scale IQ of 69, verbal of 69 and performance of 75.  Dr. Buxton concluded:

> She is mild (DSM-IV, 317.00) mentally retarded in intellect and mild/borderline mentally retarded adaptively.  On a day-to-day basis overall general functioning is felt to most closely approximate borderline mental retardation as opposed to mild mental retardation.  At best, she is marginally competent as a manager of her own affairs.  Clinically she would present with an Adjustment Disorder with Mixed Anxiety and Depressed Mood (DSM-IV, 309.28), chronic, with degree of impairment mild and prognosis fair and complaint of chest pain secondary to muscle strain/spasm with degree of impairment mild and prognosis fair.  The G.A.F. score is 65 with the rating period of over the last 3 months and 70 for 9 months prior.  The presence of the aforementioned would not preclude gainful competitive employment though there may be some parametric restrictions placed on the type of employment she would engage in on an ongoing basis.

An administrative hearing was held on May 4, 2006.  Thereafter, the ALJ determined that Randall suffered from several severe physical impairments, adjustment disorder and borderline intellectual functioning, but that she did not meet Listing 12.05(C) because:

> The claimant does not meet the threshold requirement of mental retardation, defined as significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period.[6]

The ALJ determined that Randall was not disabled because she could perform her past work as a housekeeper.[7]  The Appeals Council denied review and Randall timely filed this

---

[5] Tr. 144-146.

[6] Tr. 12-13.  The ALJ found that Randall suffered from the following severe physical impairments: recurrent arrhythmias, status post implantation of defibrillator, dilated cardiomyopathy, and hypertension.

[7] Tr. 10-17. Randall indicates that the decision is incorrectly dated July 30, 2006 as he received a copy of the decision on July 21, 2006.

3

appeal.[8] Randall's sole allegation of error in this appeal is that the ALJ erred in failing to find that she was disabled pursuant to Listing 12.05(C).

### *Listing 12.05 - Mental Retardation*

Appendix 1, 20 C.F.R., Part 404, §12.05 provides the requirements for establishing disability due to mental retardation as follows:

> *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs ... and inability to follow directions ...; or
>
> B. A valid verbal, performance, or full scale IQ of 59 or less; or
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>> 1. Marked restriction of activities of daily living; or

---

[8] The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

4

      2. Marked difficulties in maintaining social functioning; or
      3. Marked difficulties in maintaining concentration, persistence, or pace; or
      4. Repeated episodes of decompensation.

Randall contends that she meets the listing of § 12.05(C).

### *Court's Holding Re: Requirements for Listing 12.05(C)*

In the February 27, 2008 Report and Recommendation, I concluded that in order to meet the requirements of Listing 12.05(C), a claimant must demonstrate deficits in adaptive functioning as required by the "introductory paragraph" of the Listing *in addition to* meeting the requirements of Subsection C – i.e., having a valid IQ score of 60 through 70 and "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Because there appeared to be substantial evidence in the record to support the ALJ's conclusion that Randall did not have deficits in adaptive functioning, I recommended that the Commissioner's non-disability finding be affirmed.

The court rejected my interpretation of Listing 12.05(C), concluding that the requirements of sub-paragraph (C) established, in and of themselves, the requisite deficits in adaptive functioning, and that the introductory paragraph added nothing to the equation except a temporal element: i.e., the requirement that the deficits manifest before age 22:

> Thus, the level of retardation and adaptive dysfunction necessary to trigger the operation of the provision is defined within the regulation.  Consequently, the purpose of the "introductory paragraph" is not to determine whether deficits in adaptive functioning exist and how severe the deficits are, that is done within the text; rather, the purpose of the introductory paragraph is to determine *whether those deficits existed before the claimant reached the age of 22*.  Thereafter the subsections below the paragraph define and identify the circumstances under which the deficits in question are determined to be severe enough to be considered disabling.[9]

---

[9] Rec. Doc. 14, p. 6  It should also be noted that the introductory paragraph applies to *all* subsections (A-D), not just subsection C.  Applying the court's interpretation to subsection B of

5

According to the Memorandum Ruling, the issue to be determined is whether Randall's deficits in adaptive functioning, i.e., low IQ scores, manifested before she reached the age of 22.

### *Proof of Deficits in Adaptive Functioning Prior to Age 22*

There is no requirement that the claimant have IQ test results from the developmental period in order to be found disabled under Listing 12.05.  Title 65 Fed. Reg. 50,753, which sets out the final rules of the Listings regarding mental disorders, states as follows:

> The final rules clarify that we do not necessarily require evidence from the developmental period to establish that the impairment began before the end of the developmental period.  The final rules permit us to use judgment, based on current evidence, to infer when the impairment began.

Thus, it is appropriate to consider the claimant's current deficits in adaptive functioning in determining whether she had those deficits prior to age 22.

### *Deficits in Adaptive Functioning*

The Regulations define adaptive activities as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(1).  The ALJ used this definition of adaptive functioning in assessing Randall's impairment.  As discussed above, the ALJ is entitled to use current evidence in making this determination. 65 Fed. Reg. 50,753.  Thus, the ALJ assessed whether Randall had deficits in adaptive functioning and whether she established that such deficits manifested prior to age 22:

---

§12.05 would render this sub-paragraph inconsistent with the diagnostic criteria required to establish mental retardation.  Subsection B only addresses subaverage intelligence (IQ 59 or lower).  It does not contain any reference to deficits in adaptive functioning.  If the introductory paragraph indeed imposes no substantive requirement of deficits in adaptive functioning, then the temporal requirement loses its logical context, since Subsection (B) contains no such requirement.

6

> The claimant underwent formal IQ testing in July 2003 on consultative examination by Alfred E. Buxton, Ph.D. The claimant obtained a verbal IQ of 69 a performance IQ of 75 and a full scale IQ of 69. Despite these scores, Dr. Buxton relied on evidence of adaptive functioning to conclude that the claimant's adaptive functioning falls more within the borderline range of deficient intellectual functioning. The claimant has worked as a housekeeper, at times earning in excess of the amounts required to constitute substantial gainful activity. Further, the claimant testified that she completed ninth grade in regular education classes. She stated that she is able to read, write, use numbers and make change for $20. The claimant does not meet the threshold requirement of mental retardation, defined as significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period.[10]

Adaptive functioning is a factor which courts consider separate and apart from IQ scores, as directed by the Regulations' definition of the adaptive activities. Title 20 C.F.R. pt. 404, subpt. P, app. 1 §12.00(C)(1) defines adaptive activities not as intelligence, but rather as functional activities such as taking public transportation or using telephones and directories. Deficits in these areas must be present *in addition to* demonstrated subaverage intelligence in order to meet the diagnostic criteria for mental retardation. *See* Novy v. Astrue, 497 F.3d 708, 709 (7th Cir. 2007) ("In other words, and critical to Novy's case, a low IQ, but not an IQ below 60, is insufficient, even with the presence of some impairment, to establish disability per se on grounds of mental retardation. The reason is that persons with an IQ in the 60s (or even lower) may still be able to hold a full-time job, Mendez v. Barnhart, *supra*, 439 F.3d at 361; *see* Chunn v. Barnhart, 397 F.3d 667, 669 (8th Cir. 2005); Banks v. Massanari, 258 F.3d 820, 821-22 (8th Cir. 2001); Foster v. Halter, 279 F.3d 348, 355 (6th Cir. 2001). Their employment opportunities are of course limited. *See*, e.g., Paul Wehman, John Bricout & John Kregel, "Supported Employment in 2000: Changing the Locus of Control from Agency to Consumer," in Mental

---

[10] Tr. 13.

7

Retardation in the 21st Century 115 (Michael L. Wehmeyer & James R. Patton eds. 2000); William E. Kiernan, "Where We Are Now: Perspectives on Employment of Persons with Mental Retardation," Id. at 151. But the social security disability program is not an unemployment-benefits law."). Additionally, such deficits must be present prior to age 22 under the Listing.

Although the Fifth Circuit has not weighed in on the issue, many courts have ruled that a current IQ score may reflect what the person's IQ was throughout life. "Absent evidence of sudden trauma that can cause retardation, the I.Q. tests create a rebuttable presumption of a fairly constant I.Q. throughout her life." Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001); *see also* Luckey v. HHS, 890 F.2d 666, 668 (4th Cir .1989)(rebuttable presumption); Sird v. Chater, 105 F.3d 401, 402 & n. 4 (8th Cir.1997)(adopting the Fourth Circuit rule of rebuttable presumption of constant IQ); Guzman v. Bowen, 801 F.2d 273, 275 (7th Cir.1986); Morrison v. Bowen, 738 F.Supp. 1351, 1353 (D. Kansas 1987). The Eleventh Circuit Court of Appeals has held that an IQ score is not conclusive of mental retardation where the score is "inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) *citing* Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir.1986). In those cases, the Commissioner may present evidence of the claimant's daily life to rebut the presumption of disability. Hodges, 276 F.3d at 1269.

I find that the rebuttable presumption set forth in Hodges should be applied in this case. Because Randall is not required to have an actual IQ test dated prior to the age of 22, and because an IQ score is considered fairly constant throughout life, it must be presumed that Randall's July 2003 full scale IQ of 69, verbal of 69 and performance of 75 reflect what her IQ was prior to age

8

22.[11] As <u>Hodges</u> instructs, however, the presumption of disability may be rebutted by evidence of the claimant's daily life; otherwise, a low IQ score would always meet the requirements of the introductory paragraph, rendering that paragraph meaningless.

Applying the rebuttable presumption, I conclude that the ALJ's decision is supported by substantial evidence of record. As set forth above and in the first Report and Recommendation, the record clearly establishes that Randall currently does not have deficits in adaptive functioning. Randall completed all of the paperwork to apply for social security benefits in her own handwriting. She can read and make change; she has raised six children, and spends time in casinos. Because there is no requirement that actual evidence from the developmental period be produced, the ALJ was allowed to assess Randall's current functioning and use his judgment as to whether this adequately reflected what her deficits in adaptive functioning would have been prior to age 22.

Further, in addition to using the current information, the ALJ did make a finding that the record established that Randall had no adaptive deficits before age 22, and this finding is also supported by substantial evidence. As the ALJ noted, Randall completed the ninth grade in regular education classes. *See* <u>Maresh v. Barnhart</u>, 438 F.3d 897 (8th Cir. 2006)(finding that struggling in *special education classes* as well as frequent fights as a child showed deficits in adaptive functioning). Randall had her first child at the age of 16, and quit school at that time. There is no evidence that Randall discontinued her education because of any deficits in adaptive functioning. <u>Foster v. Halter</u>, 279 F.3d 348, 355 (6th Cir.2001) (a person leaving school after

---

[11] Tr. 144-146.

9

completing the ninth grade, when the reasons why are unclear, does not necessarily have deficits in adaptive functioning before age 22.).

Considering that the only showing that Randall had any deficits in adaptive functioning prior to age 22 is based on the presumption that the July 2003 IQ scores reflect prior functioning, and because Randall's activities of daily living, both currently and during the developmental period, rebut that presumption, I conclude that substantial evidence of record supports the ALJ's determination that Randall did not have deficits in adaptive functioning prior to age 22, and therefore was not disabled under Listing 12.05(C).

*Conclusion*

For the foregoing reasons, I conclude that the ALJ's findings are supported by substantial evidence.  Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.  Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the court at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

10

Signed at Lafayette, Louisiana, on May 21, 2008.

*[signature]*

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)