RECEIVED

JUL 1 1 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| ANNETTE RANDALL | CIVIL ACTION NO. 06-2093 |
| VERSUS | JUDGE DOHERTY |
| MICHAEL J. ASTRUE, COMMISSIONER SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Pending before this Court is a Supplemental Report and Recommendation issued by the magistrate judge, in which the magistrate judge recommends the Commissioner's decision in this social security matter, denying benefits, be affirmed and the case dismissed. [Doc. 16] Claimant Annette Randall filed an objection to Magistrate Judge Methvin's Supplemental Report [Doc. 17], wherein Ms. Randall argues the Report contains errors of law and fact. After consideration of the original Report and Recommendation, the Supplemental Report and Recommendation, and the record in this matter, this Court ADOPTS the findings of the magistrate judge in the Supplemental Report and Recommendation and AFFIRMS the decision of the administrative law judge denying benefits.

### I. Factual and Procedural Background

As set forth in the magistrate judge's original and supplemental Reports, Ms. Randall is 43 years old and seeks supplemental security income benefits on grounds she is disabled under Listing 12.05(C), the listing for mental retardation. Ms. Randall's application was denied on initial review, and an administrative hearing was held on May 4, 2006. Following the hearing, the administrative law judge ("ALJ") determined Ms. Randall suffers from the following severe impairments: recurrent

arrhythmias, status post implantation of defibrillator, dilated cardiomyopathy, hypertension, adjustment disorder, and borderline intellectual functioning. Nevertheless, relying on the testimony of a vocational expert, the ALJ determined Ms. Randall can perform her past relevant work as a "housekeeping cleaner," and, therefore, is not disabled. The Appeals Counsel denied review, and Ms. Randall timely filed her appeal in this court.

## II. The Magistrate Judge's Original Report and Recommendation

On appeal, Ms. Randall alleges the ALJ erred in concluding she does not meet the requirements of Listing 12.05(C), which are as follows:

> *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning *with deficits in adaptive functioning initially manifested during the developmental period*; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirement in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, of full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

In her original Report and Recommendation, the magistrate judge concluded in order to establish disability under Listing 12.05(C), the claimant must satisfy not only the requirements of Subsection (C) itself – that is, low IQ scores and another physical or mental impairment -- but also the requirements of the "introductory paragraph," which require a showing of *"deficits in adaptive functioning initially manifested during the developmental period*; i.e., the evidence demonstrates or supports onset of the impairment before age 22."

Applying the "introductory paragraph" to the facts of the instant case, the magistrate judge

2

noted there was no dispute that Randall meets the IQ score requirement (full scale IQ score of 69) and that she has severe physical impairments. Thus, the magistrate judge concluded the sole issue on appeal was whether the ALJ's conclusion that Randall has a level of adaptive functioning contra-indicating a finding of disability was supported by substantial evidence. Noting the record shows Randall reads the newspaper, makes change for a $20 bill, takes care of herself, goes to church, spends time in casinos, was in regular classes in school, travels locally independently, raised six children, and has worked in the past, and further noting Dr. Buxton's conclusion that despite Randall's IQ scores, she can function in a manner that would allow her to return to gainful employment, the magistrate judge concluded there is substantial evidence in the record that Randall does not have deficits in adaptive functioning.

Randall objected to the magistrate judge's original Report and Recommendation on two grounds: (1) the magistrate judge committed an error of law in rendering "deficits in adaptive functioning" a separate and independent requirement for purposes of satisfying Listing 12.05(C); and (2) the magistrate judge's finding that Ms. Randall does not have deficits in adaptive functioning was factually incorrect.

After review of the Report and Recommendation, the claimant's Objections, and Listing 12.05(C), this Court concluded the magistrate judge's original Report appeared to contain an error of law inasmuch as the magistrate judge interpreted the "introductory paragraph" to require a separate and independent showing of "deficits in adaptive functioning" beyond what is specifically identified within Listing 12.05(C). This Court concluded it appears the purpose of the "introductory paragraph" is not to determine whether deficits in adaptive functioning exist and how severe the deficits are, but to determine *whether those deficits existed before the claimant reached the age of*

3

22. This Court noted that, thereafter, the subsections below the paragraph define and identify the circumstances under which the deficits in question are determined to be severe enough to be considered disabling.

The Court further noted the magistrate judge had not addressed the additional inquiry required by the introductory paragraph, i.e., whether Ms. Randall's deficits in adaptive functioning, whatever they might be as defined in Subsection C, *"manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22."* As the record before this Court referenced only IQ testing conducted by Dr. Buxton in *July 2003*, this Court remanded the matter for further consideration before the magistrate judge. This Court specifically made no finding with respect to Ms. Randall's allegations regarding *factual* errors, noting the magistrate judge would re-evaluate the evidence based upon the clarified reading of the provisions of Listing 12.05(C).

### III. The Magistrate Judge's Supplemental Report and Recommendation

Now before the Court is the magistrate judge's Supplemental Report, which significantly clarifies and expounds upon the information provided in the original Report. As an initial matter, this Court notes Listing 12.05 is a poorly worded regulation susceptible of different interpretations. In her Supplemental Report and Recommendation, the magistrate judge again interprets the "introductory paragraph" to require a *separate and independent inquiry* into whether the claimant has deficits in adaptive functioning and whether those deficits existed before the claimant reached the age of 22. Again, the magistrate judge concludes the record supports the ALJ's conclusion that Randall has *no* deficits in adaptive functioning currently, and did not have any such deficits before she reached the age of 22.

The Regulations define adaptive activities as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(1). In support of her conclusion that adaptive functioning is a factor which courts consider *separate and apart* from IQ scores, the magistrate judge relies on Section 12.00(C)(1) of Title 20 C.F.R. pt. 404, subpt. P, app. 1, which defines adaptive activities not as intelligence, but rather, as functional activities such as taking public transportation or using telephones and directories. The magistrate concludes deficits in these areas must be present *in addition to* demonstrated subaverage intelligence in order to meet the diagnostic criteria for mental retardation. Although the Fifth Circuit has not ruled on this issue, the magistrate judge cites decisions from other circuits in support of her conclusion. *See, e.g., Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007); *Chunn v. Barnhart*, 397 F.3d 667, 669 (8th Cir. 2005); *Banks v. Massanari*, 258 F.3d 820, 821-22 (8th Cir. 2001); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

In her Supplemental Report, the magistrate judge correctly notes there is no requirement that the claimant have IQ test results from the developmental period in order to be found disabled under Listing 12.05. Title 65 Fed. Reg. 50,753 states:

> The final rules clarify that we do not necessarily require evidence from the developmental period to establish that the impairment began before the end of the developmental period. The final rules permit us to use judgment, based on current evidence, to infer when the impairment began.

65 F.R. 50,753.

Thus, the magistrate judge concluded it is appropriate to consider the claimant's current deficits in adaptive functioning in determining whether she had those deficits prior to age 22. The jurisprudence appears to be consistent with this regulation. Although there are no Fifth Circuit

5

opinions addressing this precise issue, courts have ruled that a current IQ score may reflect what the person's IQ was throughout life. In *Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001), a case relied upon by the magistrate judge, the Eleventh Circuit stated, "[a]bsent evidence of sudden trauma that can cause retardation, the I.Q. tests create a rebuttable presumption of a fairly constant I.Q. throughout her life." *See also Luckey v. HHS*, 890 F.2d 666, 668 (4th Cir.1989) (rebuttable presumption); *Sird v. Chater*, 105 F.3d 401, 402 & n. 4 (8th Cir. 1997) (adopting the Fourth Circuit rule of rebuttable presumption of constant IQ); *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir.1986). Additionally, the Eleventh Circuit has held that an IQ score is not conclusive of mental retardation where the score is "inconsistent with other evidence in the record on the claimant's daily activities and behavior." *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992), *citing Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir.1986). In those cases, the Commissioner may present evidence of the claimant's daily life to rebut the presumption of disability. *Hodges*, 276 F.3d at 1269. Thus, under Hodges, a current IQ score is presumed to have existed before the claimant reached the age of 22, but such score is not determinative of a disabling mental impairment. Rather, the presumption may be rebutted by evidence showing the claimant can, in fact, work.

In her Supplemental Report, the magistrate judge notes the ALJ assessed whether Randall has deficits in adaptive functioning, as follows:

> The claimant underwent formal IQ testing in July 2003 on consultative examination by Alfred E. Buxton, Ph.D. The claimant obtained a verbal IQ of 69 a performance IQ of 75 and a full scale IQ of 69. Despite these scores, Dr. Buxton relied on evidence of adaptive functioning to conclude that the claimant's adaptive functioning falls more within the borderline range of deficient intellectual functioning. The claimant has worked as a housekeeper, at times earning in excess of the amounts required to constitute substantial gainful activity. Further, the claimant testified that she completed ninth grade in regular education classes. She stated that she is able to read, write, use numbers and make change for $20. The claimant does not meet the threshold requirement of mental retardation, defined as significantly subaverage

6

general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period.

Considering the foregoing, and after clarifying the law on this subject, the magistrate judge applied the rebuttable presumption set forth in *Hodges* to the facts of this case. Noting Randall is not required to have an actual IQ test dated prior to the age of 22 in order to be found disabled and that an IQ score is considered fairly constant throughout life, the magistrate judge presumed Randall's July 2003 full scale IQ of 69, verbal of 69 and performance of 75 reflect what her IQ was prior to age 22. Nevertheless, still applying *Hodges*, the magistrate judge concluded the ALJ's decision is supported by substantial evidence of record, because Randall's *activities of daily living show she does not have deficits in adaptive functioning currently, and did not have such deficits before she reached the age of 22.* In so concluding, the magistrate judge emphasized Randall completed all of the paperwork to apply for social security benefits in her own handwriting; can read and make change; has raised six children; travels locally independently; spends time in casinos; completed the ninth grade in regular education classes; and apparently quit school after having her first child at the age of 16.[1] In sum, the magistrate judge concluded the only evidence of deficits *prior* to age 22 was the IQ score from July 2003, to wit:

> Considering that the only showing that Randall had any deficits in adaptive functioning prior to age 22 is based on the presumption that the July 2003 IQ scores reflect prior functioning, and because Randall's activities of daily living, both currently and during the developmental period, rebut that presumption, I conclude that substantial evidence of record supports the ALJ's determination that Randall did not have deficits in adaptive functioning prior to age 22, and therefore was not disabled under Listing 12.05(C).

---

[1] This fact is significant because it shows there is no evidence Randall discontinued her education because of any deficits in adaptive functioning. The Fifth Circuit has not addressed the issue, but see *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir.2001) (a person leaving school after completing the ninth grade, when the reasons why are unclear, does not necessarily have deficits in adaptive functioning before age 22.).

Considering the foregoing, the magistrate judge affirmed the decision of the ALJ and denied benefits.

## IV. Claimant's Objections to the Supplemental Report and Recommendation

In her objections to the magistrate judge's Supplemental Report and Recommendation, Randall re-urges the arguments she asserted in her original objections, namely, that the requirements of the "introductory paragraph" are temporal *only*, that is, the relevant inquiry directed by the "introductory paragraph" concerns only whether the claimant's deficits manifested before age 22. Randall argues this Court concluded as much in its Memorandum Ruling remanding the matter to the magistrate judge. As such, Randall argues the magistrate judge was "bound" by this Court's Memorandum Ruling and was directed only to determine whether Randall's deficits in adaptive functioning "manifested before she reached the age of 22." Finally, Randall argues that if the *Hodges* case applies, as the magistrate judge determined it does, the *Hodges* case *mandates* a finding of disability, because it requires a finding that Randall is presumed to have had a low IQ score before she reached 22. Randall contends this finding ends the inquiry, and that she is entitled to benefits.

## V. Law and Analysis

### 1. Law of the Case Doctrine and the Mandate Rule

First, this Court will address the claimant's argument that the magistrate judge was "bound" by this Court's Memorandum Ruing remanding this matter. Such argument is tantamount to an argument that this Court's Memorandum Ruling is the "law of the case."

"The law of the case doctrine, as formulated in this circuit, generally precludes reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the appellate court itself on a subsequent appeal." *Alpha/Omega Ins. Services, Inc. v. Prudential Ins. Co. of*

*America*, 272 F.3d 276, 279 (5th Cir. 2001), *citing Todd Shipyards Corp. v. Auto Transp.*, 763 F.2d 745, 750 (5th Cir.1985). As the Fifth Circuit has stated, the doctrine is premised "on the salutary and sound public policy that litigation should come to an end." *Alpha/Omega*, 272 F.3d at 279, *citing Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 19 (5th Cir.1974), and it applies to both civil and criminal proceedings.

The Fifth Circuit has further noted the law of the case is not a jurisdictional rule, but a discretionary practice. The doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002), *citing Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912). Law of the case, therefore, "is not inviolate." *Matthews*, 312 F.3d at 657, *citing United States v. Becerra*, 155 F.3d 740, 752 (5th Cir.1998). The doctrine has three exceptions: (1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice. *Matthews*, 312 F.3d at 657, *citing Becerra*, 155 F.3d at 752-53.

Randall's argument also implicates the so-called "mandate rule," which the Fifth Circuit has deemed to be "but a specific application of the general doctrine of law of the case." *Matthews*, 312 F.3d at 657. The mandate rule "provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." *Id.* at 657, *citing Becerra*, 155 F.3d at 753. The mandate rule, however, has the same exceptions as does the general doctrine of law of the case; these exceptions, if present, would permit a district court to exceed our mandate on remand. *Id.*

Furthermore, the Fifth Circuit has expressly held in civil cases that a district court is not

9

precluded by the law of the case doctrine from reconsidering previous rulings on interlocutory orders such as summary judgment motions, as those rulings are not immutable and lack res judicata effect. *See, e.g., Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir.1990) (holding trial court is free to reconsider and reverse its decision on an interlocutory order "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law"), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir.1994). *See also Louisiana v. Guidry*, 489 F.3d 692, 698 (5th Cir. 2007); *United States v. Palmer*, 122 F.3d 215, 220 (5th Cir.1997).

This Court notes with approval the language contained in an opinion from the North District of Iowa:

> The [law of the case] doctrine ... is applied more or less strictly depending on the circumstances of the case. When a judgment of a trial court has been appealed, the decision of the appellate court determines the law of the case, and the trial court cannot depart from it on remand. *At the trial level however, the law of the case is little more than a management practice to permit logical progression toward judgment. Orderly and efficient case administration suggests that questions once decided not be subject to continued argument, but the court has the power to reconsider its decisions until a judgment is entered.*

*Engineered Products Co. v. Donaldson Co., Inc.* 313 F.Supp.2d 951, 977 (N.D. Iowa 2004) (emphasis added).

Here, this Court remanded this matter to the magistrate judge "for further consideration" in light of this Court's findings on original review. Pursuant to that original review, this Court noted it appeared the magistrate judge had misinterpreted the requirements of the "introductory paragraph" to Listing 12.05(C). Based on this Court's initial review of the issue, the claimant's interpretation of the "introductory paragraph" – that it requires a temporal element only – appeared to have merit, and, in the absence of citations to any published, controlling Fifth Circuit opinions in the magistrate

judge's original Report, this Court concluded the proper course was for the magistrate judge to revisit the issue. Notwithstanding the foregoing, this Court finds the information provided by the magistrate judge in her Supplemental Report *significantly* clarifies and expounds upon the information provided in her original Report. While this Court continues to believe Listing 12.05 is an inartfully drafted regulation, to the extent the magistrate judge was directed to clarify her findings in light of this Court's concerns, the magistrate judge properly noted the absence of Fifth Circuit law addressing the issue, addressed the state of the law in other circuits, and expounded upon her previous findings. Under these circumstances, this Court does not find that the magistrate judge failed to adhere to the directives contained in the Memorandum Ruling.

Furthermore, it is well-settled this Court is free to reconsider any interlocutory ruling prior to the entry of judgment in this matter. After review of the additional information provided by the magistrate judge in her Supplemental Report, this Court concludes any previous finding that the "introductory paragraph" to Listing 12.05(C) contains a temporal requirement *only* goes against the weight of the persuasive authority cited by the magistrate judge. Under these circumstances, neither the magistrate judge nor this Court is bound to conclude that Randall is entitled to disability benefits merely because her IQ score of 69 is presumed to have existed before she reached the age of 22.

### 2. Legal Analysis of Randall's Claim for Benefits

In the absence of any controlling Fifth Circuit authority, the magistrate judge adopts the analytical framework set forth in *Hodges* to determine whether Randall satisfies the requirements of Listing 12.05(C). Noting the sound reasoning of the *Hodges* decision – which holds a court is to presume a current IQ score existed before the claimant reached the age of 22 but the presumption of disabling mental retardation may be rebutted with evidence of daily life showing the claimant can

11

actually work – this Court concludes the magistrate judge did not commit an error of law in evaluating the facts of the instant case under the *Hodges* analytical framework.

Notwithstanding the foregoing, this Court concludes the magistrate judge's legal analysis remains flawed, for the following reasons. First, to satisfy the "introductory paragraph" of Listing 12.05(C), Randall must show she has sub-average general intellectual functioning with deficits in adaptive functioning that developed before she reached the age of 22. This Court concludes there is substantial evidence in the record showing Randall has deficits in adaptive functioning *now* and had them *before she reached the age of 22*. Dr. Buxton reported that Randall is "mild[ly] mentally retarded in intellect and mild/borderline mentally retarded adaptively. On a day-to-day basis overall general functioning is felt to most closely approximate borderline mental retardation as opposed to mild mental retardation. At best she is marginally competent as a manager of her own personal affairs." (Tr. 144-46).

Furthermore, pursuant to *Hodges*, this Court concludes Randall's IQ score of 69 manifested before she reached the age of 22. Inasmuch as IQ scores measure, generally, intellectual functioning, it is reasonable for this court to infer Randall's deficits in adaptive functioning similarly manifested before she reached the age of 22. Such inference appears to be specifically contemplated by Title 65 Fed. Reg. 50,753, which states "[t]he final rules permit [the Commissioner] to use judgment, based on current evidence, to infer when the impairment began." Thus, this court concludes Randall has significantly sub-average general intellectual functioning with deficits in adaptive functioning that initially manifested before she reached the age of 22, and the contrary conclusion reached by the ALJ and the magistrate judge is not supported by substantial evidence.

That finding, however, does not end the inquiry. Randall must also satisfy the requirements

12

of Subpart (C) of Listing 12.05, which requires a "valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment *imposing an additional and significant work-related limitation of function,*" and this is where the Court concludes she cannot carry her burden. At the administrative level, the Commissioner put on evidence of Randall's daily life to rebut the presumption of disabling mental impairment, including the fact that Randall takes care of herself; completed all of the paperwork to apply for social security benefits in her own handwriting; can read the newspaper and make change for a $20 bill; has raised six children; goes to church; spends time in casinos; travels locally independently; completed the ninth grade in regular education classes; and has worked in the past. Along with these activities, the ALJ noted the finding of Dr. Buxton, a psychiatrist, who found that Randall's adaptive functioning falls more within the range of borderline intellectual functioning and who further stated that, despite her low IQ scores, Randall "could function in a manner that allowed her to return to gainful employment."

The Court concludes the foregoing evidence establishes that Randall's physical and/or mental impairments *do not "impose[] an additional and significant work-related limitation of function."* In other words, although Randall has deficits in adaptive functioning that manifested during the developmental period, *those deficits do not rise to the level of imposing "additional and significant work-related limitation of function."* Rather, the evidence shows Randall can, in fact, work. Thus, there is substantial evidence in the record supporting the findings of both the ALJ and the magistrate judge that Randall does not satisfy the requirements of Listing 12.05(C), albeit for reasons not identified or explained by either.

Considering the foregoing, this Court concludes the magistrate judge's legal analysis of the issue before this Court remains flawed. In requiring a separate and independent inquiry into whether

Randall has deficits in adaptive functioning and in making that inquiry the lynchpin of her legal analysis without regard to the interjection of the "additional" requirement of "work-related" functional limitation interjected by Listing 12.05(C), this Court concludes the magistrate committed an error of law. Furthermore, this Court concludes the magistrate judge's *factual* determination that Randall has no deficits in adaptive functioning is erroneous. Nevertheless, the Court concludes there is substantial evidence in the record supporting the conclusion of the ALJ and the magistrate judge that Randall is not disabled as contemplated and defined by the applicable regulation, and is, therefore, not entitled to benefits. This Court concludes Randall is not entitled to benefits *not* because she has no deficits in adaptive functioning. Indeed, this Court concludes she does have such deficits. Rather, this Court concludes Randall is not entitled to benefits because her deficits *do not rise to the level of severity required by the regulation, that is, her deficits do not rise to the level of "impos[ing] an additional and significant work-related limitation of function."* Therefore, for the reasons stated herein, it is ORDERED that the ALJ's conclusion that Randall is not entitled to benefits is AFFIRMED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this \_\_11\_\_ day of \_\_July\_\_, 2008

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE